UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**EDDIE LEE SEXTON**   CASE NO. 8:09-cv-404-T-26TBM
   DEATH PENALTY CASE
   **Petitioner,**

**V.**

**SECRETARY,**
**DEPARTMENT OF CORRECTIONS,**

   **Respondent.**
_____/

**PETITIONER'S BRIEF IN OPPOSITION TO RESPONDENT'S**
**ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

The Petitioner, Eddie Lee Sexton, through undersigned counsel, files this brief in opposition to the Respondent's Answer to the Petition for Writ of Habeas Corpus [Doc. 22].

**PROCEDURAL HISTORY**

The Petitioner accepts the Respondent's presentation of the procedural history of the Petitioner's trial, direct appeal and post-conviction proceedings in State of Florida v. Eddie Lee Sexton [Doc. 22, pp. 1-13].

**PRELIMINARY STATEMENT**

The Petitioner takes exception to the Respondent's claims of insufficient briefing and argument in the Petition for Writ of Habeas Corpus [Doc. 1]. As should have been apparent to the Respondent, the Petitioner utilized the Middle District of Florida's form (AO 241; revised 10/07; 8/2008) from the court's website for preparing and filing Document 1 as a petition for relief from a conviction or sentence by a person in state

custody under 28 U.S.C. Sec. 2254. The court's form specifically instructs petitioners to "state the facts that support each ground" (page 1). For the supporting facts of each ground presented, the court's form instructs petitioners as follows: "Do not argue or cite law. Just state the specific facts that support your claim" (page 6, *et seq*.). Thus, by using the court's form in a minimally modified format, the Petitioner anticipated this court's merits briefing schedules as outlined in the court's orders of March 9, 2009 [Doc. 4] and September 16, 2009 [Doc. 19]. The Respondent is therefore wrong to claim that a petition presenting only the specific facts for each ground, as the court so instructs petitioners, is in violation of this court's procedure and precedents for presenting legal argument in the merits briefing of this case.

## STANDARDS OF REVIEW

Except as noted above regarding the Respondent's preliminary statement, the Petitioner generally accepts the Respondent's presented standards of review as dictated by cases such as Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000); Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843 (2002); Marquard v. Sec'y for Dep't of Corr., 429 F.3d 1278 (11th Cir. 2005); and Breedlove v. Moore, 279 F.3d 952 (11th Cir. 2002).

## ARGUMENT
## GROUND V

**WHETHER FLORIDA'S DEATH PENALTY STATUTORY SCHEME IS UNCONSTITUTIONAL BECAUSE IT ALLOWS A JURY TO RETURN A DEATH RECOMMENDATION BY A MAJORITY VOTE?**

The Petitioner accepts the Respondent's argument and citations to existing law as

to Ground V.

## GROUND VI
## WHETHER THE STATE COURT ERRED IN DENYING PETITIONER'S CLAIM OF INEFFECTIVE ASSISTANCE OF PENALTY PHASE COUNSEL?

The Respondent claims that the Florida state courts made numerous and correct findings of fact in their handling of Petitioner's case. While there were numerous findings, several were significantly in error. The findings of the state postconviction court and the subsequent resolution by the Florida Supreme Court were therefore based on an unreasonable determination of the complete body of facts in light of the evidence presented in the State court proceeding in violation of Sec. 2254(d)(2). The Florida Supreme Court overlooked and misapprehended points of law and fact that were critical to the resolution of the claims submitted to it by the Petitioner.

A key misapprehended fact occurred when the Court stated that "Sexton instead primarily criticizes his trial counsel for a so-called "rifle" approach, which highlighted strong mental mitigation, rather than a "shotgun" approach that would include any and all factors discovered by counsel that might conceivably be considered mitigating." Sexton v. State, 997 So.2d 1073, 1078-85 (Fla. 2008). The terms "rifle" and "shotgun" approaches to mitigation presentation were not simply ones of generic usage in the field of capital defense work. They were the terms defense counsel himself used to describe his work in handling capital cases in the late 1990's. (PCR V. 18 228-229). Defense counsel had explained that "back then I was more conservative in what I would serve up

3

to a jury than I am now.  I have come to the conclusion over the last several of these that you just throw everything into the pot." (PCR V. 18 228).  *Lockett v. Ohio* was decided in 1978.  438 U.S. 586 (1978).   Mr. Fraser told the court it was not until after the subject retrial in 1998 that he decided to abandon the "rifle" approach.   Thus, the Petitioner was a victim of defense counsel's delayed understanding and practical application of the obligation to present any and all mitigation evidence to the jury.  "'[T]he right to present, and to have the sentencer consider, *any and all mitigating evidence* means little if defense counsel fails to look for mitigating evidence or fails to present a case in mitigation at the capital sentencing hearing.  Accordingly, counsel's general duty to investigate takes on supreme importance to a defendant in the context of developing mitigating evidence to present to a judge or jury considering the sentence of death; claims of ineffective assistance in the performance of that duty should therefore be considered with commensurate care." *Strickland v. Washington*, 466 U.S. 668 at 706, (1984)(Brennan, J., concurring in part and dissenting in part)(emphasis added).

     Another example of a misapprehended fact is when the Florida Supreme Court twice stated that "[f]urther, *the jury heard* substantial evidence of Sexton's childhood and background, including that Sexton's father died when he was only ten, that his mother was disabled by a stroke during his childhood, that Sexton had a low IQ, *and that he later developed multiple sclerosis and other serious medical problems*. Sexton, supra. (emphasis added).  In fact, the jury never heard testimony that Sexton had MS and other serious medical problems because defense counsel Fraser did not know that Sexton had

4

MS and never presented it or the other serious medical problems to the jury or to the judge at sentencing.  *See, e.g.*, the submitted Memorandum of Law in Support of Life Imprisonment  ®. V. 3 359-370) and counsel's evidentiary hearing testimony (PCR V. 18 162-164).

The Florida Supreme Court was also in error when it found that "counsel presented [to the jury and court] the information he was able to obtain." Sexton, supra. What counsel did present was that (1) Sexton was capable of kindness to children and would even act as Santa Claus at Christmas; (2) Sexton was the pastor of a church attended by family and friends; (3) Sexton often helped his mother and sisters with household chores and repairs; (4) Sexton's father died when the defendant was ten years old, depriving him of a male role model.  Sexton, supra.;  Memorandum of Law in Support of Life Imprisonment  ®. V. 3 367).  What counsel did not present and could have presented was the additional mitigation evidence of (1) Defendant's early childhood background in impoverished conditions; (2) his disadvantaged childhood; (3) his deprived childhood; (4) the possible physical abuse inflicted by his brother, Otis Sexton; (5) his limited education; (6) his family history of mental illness; (7)  his family history of retardation; (8) his family history of learning disabilities; (9) his history of alcohol dependence; (10) his history of narcotic dependence; and (11) his multiple sclerosis. (PCR V. 4 778-779).

Consequently, while the Florida Supreme Court was correct that counsel made an

informed strategic decision at retrial to focus on the statutory mitigation of brain damage, the cursory conclusion of the court that it was reasonable for counsel to ignore and not present the additional non-statutory mitigation can only be explained by the misapprehension of the facts detailed here.

Trial counsel performs deficiently by not providing readily available mitigating evidence to the jury at the penalty phase because he prejudices a convicted defendant's receiving an individualized sentence. *Cunningham v. Zant*, 928 F.2d 1006, 1019 (11th Cir. 1991). Failure to present mitigation evidence as to a defendant's family background or alcohol and drug abuse at the penalty phase of a capital case constitutes ineffective assistance of counsel, particularly when defense counsel "was aware of [petitioner's] past and knew that mitigation was his client's sole defense." (footnote omitted) *Elledge v. Dugger*, 823 F.2d 1439, 1445, *withdrawn in part on denial of rehearing en banc*, 833 F.2d 250 (11th Cir. 1987). The Florida Supreme Court failed to explain how the decisions to limit the mitigation complied with the existing professional standards that "counsel *should present* to the sentencing entity or entities *all reasonably available* evidence in mitigation unless there are strong strategic reasons to forego some portion of such evidence" . . . including "family and social history" and "expert testimony concerning [any of] the above and the resulting impact on the client...". ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases, Comment D, Guideline 11.8.2; 11.8.6(B)(5); 11.8.6(B)(8) (1989)(emphasis added); Norton, *Capital Cases: Mitigation Investigations*, The Champion, NACDL, (May, 1992).

Counsel's reliance on his own notions as to the "non-persuasiveness" of medical or other mitigation improperly inserted his personal views into that of the sentencing jury's role - thereby making this an unreasonable and unsound strategy. With an 8 to 4 jury recommendation for death, by misapprehending these facts and by giving cursory regard to the remarkably limited presentation of non-statutory mitigation at retrial, the Florida Supreme Court misapprehended or overlooked the law of the role of the jury as emphasized in *Brownlee*:

> It is evident that ... a prejudicial error in the jury phase of a bifurcated sentencing proceeding, such as the Sixth Amendment violation in this case, prevents the jury from issuing a valid advisory verdict. Without such a verdict, the trial judge is unable to perform his statutorily-mandated task of considering the jury's opinion and building upon that opinion to fashion an appropriate sentence for the defendant. As a result, a prejudicial error in the jury phase, such as a violation of the Sixth Amendment's right to counsel, taints the entire sentencing proceeding. Allowing a judge to cure this taint in this case of an individual defendant could limit the significance of the jury participation required by statute and would risk ... "infus[ing] an unacceptable level of arbitrariness into the administration of the death penalty." (*quoting Magill v. Dugger*, 824 F.2d 879, 894 (11th Cir. 1987). This is especially true in Alabama as it is in Florida. Because the Alabama legislature has given the jury an essential role in the sentencing process, that role cannot be readily abrogated.

*Brownlee v. Haley*, 306 F.3d 1043, 1078 (11th Cir. 2002).

### GROUND VIII
### WHETHER THE STATE COURT ERRED IN DENYING PETITIONER'S CLAIM THAT THE CUMULATIVE EFFECTS OF INEFFECTIVE ASSISTANCE OF COUNSEL AND IMPROPER TRIAL COURT RULINGS RENDERED HIS CONVICTION MATERIALLY UNRELIABLE?

The claim in the state courts was that Petitioner's conviction is materially

unreliable because no adversarial testing occurred due to the cumulative effects of ineffective assistance of counsel and improper rulings of the trial court, in violation of appellant's rights as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments. The claim was denied because the Florida Supreme Court had denied relief in all the other claims in the postconviction motion. (PCR Vol. 4 p. 786). Under different circumstances, the cumulative effects claim can make for an appropriate summation of all the errors presented in a trial record and postconviction proceeding. However, with the courts below limiting the evidentiary hearing to the one claim involving the penalty phase of the retrial, the Petitioner was not able to establish a guilt phase record of trial counsels' shortcomings or their legal consequences.

However, the Florida Supreme Court's opinion on direct appeal noted two separate deficiencies of trial counsel that are part of the record of this case and which are not affected by the limited evidentiary hearing. Those deficiencies were recognized as the Court addressed the issues raised by the defendant's direct appeal counsel. First, the Court found procedurally barred the claim of error of admitting into evidence testimony relating to the death of the infant, Skipper Lee Good, because counsel did not object to the admission of this testimony. The Court, however, further reviewed the claim, even though it was not preserved, and rejected it on the merits. Sexton v. State, 775 So.2d 923, 929-930 (Fla. 2000).

Secondly, the Court found procedurally barred the claim of error to admit victim

8

impact testimony that erroneously focused on the death of Joel Good's deceased infant and the witnesses' opinions of the killings because trial counsel failed to make a contemporaneous objection. The Court subsequently found that this was not fundamental error. Sexton, 775 So.2d at 931-932. Combined with the shortcomings of counsel and prejudice to defendant, these deficiencies should cumulatively lead to relief for the Petitioner because, even if not one single act or omission is deemed sufficient to warrant relief, the cumulative effect of two or more of them may do so. Cherry v. State, 659 So.2d 1069 (Fla. 1995); Harvey v. Dugger, 656 So.2d 1253 (Fla. 1995); Jackson v. State, 498 So.2d 906, 910 (Fla. 1986); Friedman v. United States, 588 F.2d 1010 (5th Cir. 1979); Griffin v. Wainwright, 760 F.2d 1505 (11th Cir.1985); Goodwin v. Balkcom, 684 F.2d 794 (11th Cir.1982), cert. denied, 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed..2d 364 (1983).

                              Respectfully submitted,

                              s/ Robert T. Strain
                              Robert T. Strain
                              Attorney for Petitioner
                              Fla. Bar No.: 32596
                              Assistant CCRC
                              Office of the Capital Collateral Regional
                              Counsel -  Middle Region
                              3801 Corporex Park Drive, Suite210
                              Tampa, Florida 33619
                              Telephone 813.740.3544x116
                              Fax 813.740.3554
                              Email:   strain@ccmr.state.fl.us

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Stephen D. Ake, Assistant Attorney General, and to the following non-CM/ECF participants: none.

              s/ Robert T. Strain
              Robert T. Strain
              Florida Bar No. 0325961
              Assistant CCRC
              Office of the Capital Collateral Regional
              Counsel -Middle Region
              3801 Corporex Park Dr. - Suite 210
              Tampa, FL 33169-1136
              Telephone (813) 740-3544
              Fax No. (813)740-3554
              Email: strain@ccmr.state.fl.us
              Attorney of Record for Petitioner