UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**EDDIE LEE SEXTON,**

    **Petitioner,**

v.                                CASE NO. 8:09-CV-404-T-26TBM
                                       <u>DEATH PENALTY CASE</u>

**SECRETARY,**
**DEPARTMENT OF CORRECTIONS,**

    **Respondent.**
_____/

**<u>RESPONDENT'S REPLY TO PETITIONER'S BRIEF IN OPPOSITION</u>**

COMES NOW the Respondent, Secretary, Department of Corrections, State of Florida, by and through the undersigned Assistant Attorney General, and files this Reply to the Petitioner's Brief in Opposition (Dkt. 24).

**<u>PRELIMINARY STATEMENT/STANDARD OF REVIEW</u>**

Respondent has previously filed the complete state court record with this Court (Dkt. 10, Exs. A-B37), and will cite to the appropriate exhibits within Document 10 as A\_\_ or B\_\_.

**<u>GROUND V</u>**

**WHETHER FLORIDA'S DEATH PENALTY STATUTORY SCHEME IS UNCONSTITUTIONAL BECAUSE IT ALLOWS A JURY TO RETURN A DEATH RECOMMENDATION BY A MAJORITY VOTE?**

Respondent will rely on its prior argument contained in Respondent's Answer to the Petition for Writ of Habeas Corpus for this claim as it appears that Petitioner has conceded that

he is not entitled to relief.  See Dkt. 22, Respondent's Answer to Petition for Writ of Habeas Corpus at 19-21.

### GROUND VI

**WHETHER THE STATE COURT ERRED IN DENYING PETITIONER'S CLAIM OF INEFFECTIVE ASSISTANCE OF PENALTY PHASE COUNSEL?**

Petitioner asserts that he is entitled to federal habeas relief on his ineffective assistance of penalty phase counsel claim because the Florida Supreme Court's resolution of this claim on appeal was based on an unreasonable determination of the facts.  Under 28 U.S.C. § 2254(d)(2), an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Contrary to Petitioner's assertions, the Florida Supreme Court's decision was not based on an unreasonable determination of the facts.

Petitioner first vaguely asserts that the Florida Supreme Court misapprehended facts when analyzing his claim that penalty phase counsel was ineffective for failing to utilize the "shotgun" approach at the resentencing proceeding.  As the Florida Supreme Court properly stated in its opinion:

This is not a case where trial counsel failed to investigate, obtain or provide any background or childhood mitigation and could not therefore make a reasoned strategic decision about its presentation. Cf. Riechmann, 777 So. 2d at 350 (finding counsel deficient where they conducted "no investigation and presented no evidence of mitigation"); Rose v. State, 675 So. 2d 567, 572 (Fla. 1996) (finding representation deficient where "counsel never attempted to meaningfully investigate mitigation"). Nor is this a case where counsel did not take reasonable steps to investigate Sexton's background for mitigation. Cf. Ragsdale, 798 So. 2d at 719 (holding that counsel was ineffective due to inadequate investigation and failure to present certain mitigators where "counsel's entire investigation consisted of a few calls made by his wife to Ragsdale's family members").

**Sexton instead primarily criticizes his trial counsel for a so-called "rifle" approach, which highlighted strong mental mitigation, rather than a "shotgun" approach that would include any and all factors discovered by counsel that might conceivably be considered mitigating. Further, Sexton claims that counsel was deficient for failing to understand the law of mitigation, as set forth in Lockett v. Ohio, 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978),[FN6] and its progeny.**

[FN6. Lockett held that the sentencing judge or jury may not be precluded from considering any evidence regarding mitigating circumstances that is proffered by a defendant. 438 U.S. at 604, 98 S. Ct. 2954; see also Coday v. State, 946 So. 2d 988, 1013 (Fla. 2006) ("The United States Supreme Court in a case from Florida held that a sentencer could not refuse to consider or be precluded from considering any relevant mitigating evidence." (citing Hitchcock v. Dugger, 481 U.S. 393, 107 S. Ct. 1821, 95 L. Ed. 2d 347 (1987))), cert. denied, --- U.S. ----, 127 S. Ct. 2918, 168 L. Ed. 2d 249 (2007).]

Initially, it should be noted that Sexton was represented by the same two attorneys at both the

>    first and second trials. Therefore, trial counsel was cognizant of the mitigation that was presented in the first trial, which resulted in a jury recommendation of death by a seven-to-five vote where **no mental mitigation was presented**. In contrast, at the second sentencing proceeding, penalty phase counsel presented two mental health experts to establish that Sexton suffered from brain damage, in addition to presentation of other nonstatutory mitigation similar to that presented in the first trial. As we will now discuss, we agree with the trial court that Sexton has failed to demonstrate that counsel was deficient in his mitigation investigation or presentation.

Sexton v. State, 997 So. 2d 1073, 1079-80 (Fla. 2008) (footnote omitted and emphasis added). As this Court is well aware, the state court's factual findings are presumed correct unless Petitioner rebuts them by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Marquard v. Secretary for Dep't of Corr., 429 F.3d 1278, 1303 (11th Cir. 2005). Petitioner has failed to establish that the Florida Supreme Court misapprehended any facts or based its decision on an unreasonable determination of the facts as presented in state court.

At the postconviction evidentiary hearing, penalty phase counsel explained in great detail his investigation into Sexton's background and described why he utilized the "rifle" approach of focusing on the strong mental mitigation, rather than the "shotgun" approach of presenting all evidence which could conceivably be considered as mitigating. Penalty phase counsel's testimony clearly indicates that he understood that he was entitled to present *any* mitigating evidence pursuant to

Lockett,[1] but he made "an informed strategic decision to focus on actual brain damage as statutory mental mitigation and was successful in convincing the trial court to find and assign great weight to the statutory mitigator of extreme mental or emotional disturbance based on the experts' testimony." Id. at 1085. The Florida Supreme Court properly reviewed the testimony from the state court postconviction evidentiary hearing and correctly concluded based on these facts that Petitioner failed to establish that penalty phase counsel preformed deficiently under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).

Petitioner next argues that the Florida Supreme Court misapprehended the facts when it stated "[f]urther, *the jury heard* substantial evidence of Sexton's childhood and background, including that Sexton's father died when he was only ten, that his mother was disabled by a stroke during his childhood, that Sexton had a low IQ, *and that he later developed multiple sclerosis and other serious medical problems*." Sexton, 997 So.

---

[1] Contrary to Petitioner's assertion, penalty phase counsel did not have a "delayed understanding" of the applicable law. Rather, as counsel explained, he simply changed his philosophy on the applicable strategy to pursue in penalty phase proceedings during his lengthy career handling capital cases. Counsel testified in April, 2006 that, at the time of Sexton's resentencing in 1998, "I was much more conservative in what I would serve up to a jury than I am now. I have come to the conclusion over the last several of these that you just throw everything into the pot. Back then I was trying to use a rifle as opposed to a shotgun, more so than now." (B18 at 228-29).

2d at 1077, 1082. Petitioner argues that this fact is inaccurate because penalty phase counsel was unaware that Sexton had multiple sclerosis and never presented this information to the jury. Petitioner has failed to rebut the state court's factual findings based on clear and convincing evidence and has failed to demonstrate that the Florida Supreme Court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

At the state postconviction evidentiary hearing, penalty phase counsel Fraser testified regarding his thorough attempts to obtain Sexton's available medical records. As the Florida Supreme Court noted:

> [T]he evidence established that Fraser provided the background information and medical and health records that he did obtain to the experts who testified at the penalty phase. Those records included: Sexton's letters and notes; letters from Ironton City Schools; letters to and from psychiatrist Dr. Michael S. Maher, who had examined Sexton prior to the first trial; **requests made for hospital records; Sexton's medical records from Dr. Lawrence Saltis, M.D.; jail medical records from Hillsborough County; medical records from Massilon County hospitals; medical records from Union Correctional Institution**; memos and notes regarding interviews with Sexton and various witnesses; memos from defense investigator Richard Hart; and letters from Drs. Irving Weiner and Frank Wood, who testified at the retrial.

Sexton, 997 So. 2d at 1082 n.8. At the 2006 evidentiary hearing, penalty phase counsel was asked if he recalled Sexton's medical condition at the time of the resentencing. Fraser

initially replied, "I want to say, it was muscular dystrophy. He had a neurological condition which, if memory serves well, he was forced to use a wheelchair" at the proceedings. (B18 at 162). Penalty phase counsel explained that he had obtained all of Sexton's available medical records, but he did not feel that there was any connection between Sexton's multiple sclerosis and his behavior so he did not present it as mitigating evidence.[2] (B18 at 163-64). Penalty phase counsel subsequently recalled that he was aware of Sexton's diagnosis of multiple sclerosis prior to the resentencing and had inquired of his mental health expert regarding its affect on Sexton's mental or emotional health. (B18 at 220-21). Thus, the record clearly refutes Petitioner's assertion that penalty phase counsel was unaware of his medical condition.

Furthermore, as the Florida Supreme Court properly noted, penalty phase counsel provided Sexton's medical records to his mental health experts. As previously discussed, penalty phase counsel made the strategic decision to focus his mitigation case

---

[2] Penalty phase counsel's opinion was supported by the testimony of Dr. Stein who testified that Sexton's "multiple sclerosis did not affect or influence his conduct on the date of the crimes, did not influence or affect his judgment or ability to carry out goal-directed behavior at the time of the crimes, did not produce an extreme mental or emotional disturbance that influenced his conduct at the time of the crimes and did not substantially impair his capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of the law at the time of the crimes." (B4 at 778).

on Sexton's brain damage and, accordingly, counsel presented extensive evidence from his mental health experts regarding Sexton's mental health. One of the mental health experts, Dr. Wood, testified before the jury that Sexton had a brain disease that was possibly multiple sclerosis. (A11 at 979). Thus, given the extensive testimony regarding Sexton's brain disease and his attendance at the proceedings in a wheelchair, the Florida Supreme Court did not "misapprehend" the facts when it stated that the jury heard evidence that Sexton had developed multiple sclerosis.

Even if the Florida Supreme Court erred in concluding that the evidence showed the jury heard that Sexton had "developed" multiple sclerosis, this detail was not relevant to the court's analysis and is clearly harmless error. The Florida Supreme Court thoroughly reviewed Petitioner's claim of ineffective assistance of penalty phase counsel and properly concluded that counsel did not perform deficiently by failing to investigate and present the available mitigating evidence. If this Court finds that the Florida Supreme Court misapprehended the facts as it relates to Petitioner's medical condition, any error was harmless under the standard set forth in Brecht v. Abrahamson, 507 U.S. 619, 113 S. Ct. 1710 (1993). Under this standard, a habeas petitioner may obtain plenary review of their constitutional claims, but is not entitled to habeas relief

based on trial error unless they can establish actual prejudice. Kotteakos v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946). Petitioner cannot establish any prejudice regarding this claim.

Finally, Petitioner alleges that the Florida Supreme Court misapprehended the facts when it reached the "cursory" conclusion that it was reasonable for penalty phase counsel to focus on Sexton's brain damage and "ignore" other nonstatutory mitigation. Contrary to Petitioner's assertions, the state courts conducted a thorough review of Petitioner's claim and properly concluded that penalty phase counsel made sound strategic decisions in presenting the available mitigation. As the state court noted, obtaining mitigating evidence from Sexton and his family was extremely difficult due to their shifting alliances and the horrible abuse inflicted upon the family members by Sexton. (B18 at 195-96, 209). After interviewing Sexton and other family members, penalty phase counsel learned that Sexton's childhood, while not ideal, certainly was not deprived. Sexton had a happy childhood and was raised in a religious atmosphere. Counsel found no evidence that Sexton lived in any particular squalor, that he did not eat well, or that he did not have clothes to wear. Penalty phase counsel testified that he had a strategic reason for not "cluttering up" the jury's perception regarding this evidence because he did not

find it persuasive, especially given the fact that there was no connection between any childhood issues and the crimes Petitioner committed some forty years later. (B18 at 165-67; 199-201).

In sum, Petitioner has failed to demonstrate that the Florida Supreme Court's decision affirming the state trial court's denial of postconviction relief was based on an unreasonable determination of the facts as presented in state court. Because Petitioner has failed to carry his burden under section 2254(d), this Court should deny the instant claim.

## GROUND VIII

**WHETHER THE STATE COURT ERRED IN DENYING PETITIONER'S CLAIM THAT THE CUMULATIVE EFFECTS OF INEFFECTIVE ASSISTANCE OF COUNSEL AND IMPROPER TRIAL COURT RULINGS RENDERED HIS CONVICTION MATERAILLY UNRELIABLE?**

Respondent will rely on its argument contained in the Answer to the Petition for Writ of Habeas Corpus for this claim. See Dkt. 22, Respondent's Answer to Petition for Writ of Habeas Corpus at 34-43.

WHEREFORE, based on the above arguments and prior pleadings filed in the instant case, Respondent respectfully requests that this Court deny Grounds V, VI, and VIII of the pending habeas petition.

                Respectfully submitted,

                BILL McCOLLUM
                ATTORNEY GENERAL

                <u>s//Stephen D. Ake</u>
                STEPHEN D. AKE
                Assistant Attorney General
                Florida Bar No. 0014087
                Counsel for Respondents
                Concourse Center 4
                3507 East Frontage Road, Suite 200
                Tampa, Florida 33607-7013
                Telephone: (813) 287-7910
                Facsimile: (813) 281-5501
                E-mail: stephen.ake@myfloridalegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of December, 2009, I electronically filed the foregoing RESPONDENT'S REPLY TO PETITIONER'S BRIEF IN OPPOSITION with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Robert T. Strain, Assistant CCRC-Middle, 3801 Corporex Park Drive, Suite 210, Tampa, Florida 33619-1136, e-mail: strain@ccmr.state.fl.us.

s// Stephen D. Ake
STEPHEN D. AKE
Assistant Attorney General
Florida Bar No. 0014087
Counsel for Respondents
Concourse Center 4
3507 East Frontage Road, Suite 200
Tampa, Florida 33607-7013
Telephone: (813) 287-7910
Facsimile: (813) 281-5501
E-mail: stephen.ake@myfloridalegal.com